30 C.C.P.A.(Patents)

### PEARSON v. ELDER.

### Patent Appeal No. 4679.

Court of Customs and Patent Appeals.

June 22, 1943.

Mason & Porter, of Washington, D. C. (Eugene G. Mason and Herbert H. Porter, both of Washington, D. C., of counsel), for appellant.

Cushman, Darby & Cushman, of Washington, D. C. (John J. Darby, of Washington, D. C., of counsel), for appellee.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges.

GARRETT, Presiding Judge.

This is an appeal from the decision of the Board of Interference Examiners of the United States Patent Office awarding priority of invention to the party Elder.

The interference involves an application of the party Elder (serial No. 714,167) filed March 5, 1934, and a patent, No. 2,171,258, granted to the party Pearson August 29, 1939, based on an application filed July 12, 1937.

The invention, so far as the count here involved is concerned, defines a device for attaching protective discs (or disks), or spots (the term discs and spots being used interchangeably), to cork-sealing pads in crown caps used on bottles.

So far as we can determine from the record certified to us, the background of the controversy may be stated as follows:

Claim 6 of the patent reads: "6. In a pad and protective disk assembling machine,

a disk carrier, means for *attaching* a fusible adhesive coated disk *to* said carrier, means for directly heating the disk while on said carrier, means for presenting a pad and said supported disk in centered relation, and means for pressing together the carried disk and a pad to cause the disk to be adhesively united to the pad." (Italics supplied.)

September 5, 1939, Elder copied the above claim into his application, numbering it 92, and requested that an interference be declared. The Primary Examiner rejected the claim ex parte "as unwarranted by the disclosure in the use of the term 'attaching'," and refused to declare an interference.

Thereafter (specifically on November 13, 1939) Elder presented, for inclusion as an amendment to his application, the following claim, numbering it 96: "96. In a pad and protective disc assembling machine, a disc carrier, means for *supporting* a fusible adhesive coated disc *on* said carrier, means for directly heating the disc while on said carrier, means for presenting a pad and said supported disc in centered relation, and means for pressing together the carried disc and a pad to cause the disc to be adhesively united to the pad." (Italics supplied.)

It will be observed that the only distinction between claim 6 of the Pearson patent and claim 96 of Elder's application is that Elder substituted "supporting * * * on" for "attaching * * * to" in the third clause of the claim.

In connection with the amendment (claim 96) presented on November 13, 1939, Elder, under the heading "Remarks," submitted argument respecting his claim 92 (claim 6 of the patent) and urged that the examiner should withdraw his rejection of that claim, but in concluding his argument said: "If the Examiner is not inclined to withdraw his rejection [of claim 92], he is requested to declare an interference on the basis of the new claim 96."

The examiner adhered to his rejection of claim 92, but said with respect to claim 96: "Claim 96 is drawn to substantially the same invention as claim 6 of patent number 2,171,258 to P. E. Pearson. Therefore an interference will be promptly declared. Ex parte Card and Card, 1904 C.D. 383; Bonine v. Bliss, 1919 C.D. 75; McCabe v. Cramblet, [65 F.2d 459], 1933 C.D. 563."

The interference was declared December 6, 1939, claim 96, as above quoted, becoming the sole count of the issue. It is noted that the statement in the declaration of the relation of the count to the claims of the respective parties reads:

| Count | Pearson | Elder |
|---|---|---|
| 1 | 6 (substantially) | 96 |

"Claim 96 of the Elder application corresponds to claim 6 of the Pearson patent except that 'supporting' has been substituted for 'attaching.'"

The preliminary statements of the parties are not included in the record certified to us, but it appears from the record that Pearson (the junior party) did not allege any date prior to Elder's filing date; that Pearson was placed under order to show cause why judgment on the record should not be entered against him, and that in response he moved to dissolve the interference on the ground that (1) Elder had no right to make the claim constituting the count, and (2) that the count is unpatentable to Elder for lack of disclosure of an operative structure.

In a decision rendered October 2, 1940, the examiner denied the motion to dissolve. The only portion of his decision embraced in the record before us is that relating to the claim that Elder has no right to make the count, and, apparently, that was the only ground urged before the Board of Interference Examiners.

On October 7, 1940, Pearson filed a request for rehearing, stating that it was made under rule 130 of the Patent Office, 35 U.S.C.A.Appendix. It was requested that the case "be set for final hearing, and that he be given an opportunity to urge the non-patentability of the claim to Elder." The record indicates that at some time Pearson sought to take testimony on the question of inoperativeness and that this was denied by the examiner whose decision in that respect was affirmed by the commissioner. Whatever may have been the proceedings in the Patent Office with respect to that phase of the controversy, the matter of inoperativeness was not referred to in Pearson's reasons of appeal to us, nor in the argument before us, and it is not here involved.

The case was duly set for final hearing before the Board of Interference Examiners. That tribunal stated, "The question for determination * * * is the sufficiency of Elder's original disclosure to support the count." The board then quoted

the specific questions raised by Pearson under rule 130, as follows:

"(1) Elder did not disclose in his application as filed any 'means for directly heating the disk while on said carrier.'

"(2) The term 'supporting' as used in the count of the interference, must mean 'attached' as used in claim 6 of the Pearson patent, and Elder has not disclosed any means for attaching the spot to the carrier.

"(3) Elder has not disclosed any means for pressing together the carried disk and a pad to cause the disk to be adhesively united to the pad."

The board then proceeded to make (as the examiner had made) an elaborate analysis of Elder's disclosure (the board's analysis and discussion of the questions raised incident to the disclosure covers practically nine pages of the printed record before us) and, agreeing with the examiner that Elder's disclosure supports the count, awarded priority to Elder.

The board's decision, however, went further than merely upholding Elder's right to make the count. It specifically held *that it could not be made by Pearson* and stated " * * * this constitutes an additional reason for awarding priority to Elder."

Evidently the holding so made was based upon the board's finding to the effect that there was no disclosure by Pearson of means for supporting a fusible-adhesive coated disk on his carrier. It was not questioned that he disclosed means for attaching a fusible-adhesive coated disk to his carrier, as defined in claim 6 of his patent. So, in the final analysis, the board's decision (which was made of its own motion, the case of Eger v. Watson, 104 F.2d 953, 26 C.C.P.A.,Patents 1411, being cited as its authority for raising the question sua sponte) on that particular phase of the case turned upon the distinction between "supporting * * * on" and "attaching * * * to," or, more strictly speaking, upon the distinction between the prepositions "on" and "to."

In making the ruling the board cited and quoted from this court's decision in the case of Field v. Stow, 49 F.2d 1072, 18 C.C.P.A.,Patents, 1502.

Following Pearson's appeal to this court and the filing of his brief, Elder presented a motion to dismiss the appeal "on the ground that the Court is without jurisdiction since the appeal presents no issue which should be decided by this Court."

The motion was taken under advisement and argument thereon presented in connection with the arguments on the merits.

In the motion itself argument was presented relating to the effect of the board's finding that Pearson had no right to make the count. It was said therein that while Pearson "filed [before the examiner] a motion to dissolve questioning Elder's right to make the count," he (Pearson) "in his motion raised no question as to his own right to make the count," and it was further asserted that *in his brief* before us Pearson "admits that the Board was correct in holding that the Pearson application does not support the count."

We will first dispose of the motion to dismiss. It is based solely upon the alleged admission in Pearson's original brief filed before us, subsequently, of course, to the filing of the reasons of appeal. The motion does not appear to question the sufficiency of certain of the reasons of appeal to raise the question of error as to the board's finding that Pearson could not make the count. In Pearson's brief on the motion to dismiss he denies that he intended to admit in his original brief on the merits that he could not make the count and directs attention to two of the reasons of appeal (Nos. 6 and 9) set forth in the appeal to us. Those read:

"6. The Board of Interference Examiners erred in awarding priority to Elder on the ground that Pearson cannot make the count of the interference; if Pearson cannot make the count of the interference then no interference exists and the interference should have been dissolved."

"9. The Board of Interference Examiners erred in failing to find that the word 'supporting' as used in the count of the interference denotes a means for attaching the disk to a carrier therefor and in failing to hold that Elder has not disclosed in his application a means for attaching a spot to the carrier."

Upon the facts here appearing, we think the question of *jurisdiction* must be determined upon the basis of the reasons of appeal (not upon the basis of anything said in Pearson's brief) and it is our view that in the reasons of appeal, above quoted, Pearson raised the question of error respecting the board's ruling that he (Pearson) could not make the count.

So, we hold that we have jurisdiction and Elder's motion to dismiss the appeal is denied.

In considering the issues which the controversy presents, it appears most logical that we pass, first, upon that of Elder's right to make the count, because, under the facts above recited, it is obvious that if he has the right to make it, he is entitled to an award of priority upon that basis alone, and, so far as this proceeding is concerned, Pearson's right to make it becomes immaterial.

The count defines a machine (to be used in attaching protective discs to cork-sealing pads in bottled crown caps) in which are combined elements as follows: (1) "A disc carrier," (2) "means for supporting a fusible adhesive coated disc on said carrier," (3) "means for directly heating the disc while on said carrier," (4) "means for presenting a pad and said supported disc in centered relation," and (5) "means for pressing together the carried disc and a pad to cause the disc to be adhesively united to the pad."

We have deemed it proper to thus state the elements of the count analytically because of the state of the pleadings before us.

The examiner who denied Pearson's motion to dissolve obviously was of opinion that the physical elements of the count in the combined arrangement described were supported by Elder's disclosure. In fact, he specifically discussed such elements as appeared to be material and pointed out the features of Elder's disclosure which, in his opinion, supported them. His decision, of course, was limited to the question of dissolving the interference, the matter of priority not being before him for determination.

The Board of Interference Examiners in its decision on the question of priority, so far as we can determine from the record certified to us, discussed and decided every question which Pearson raised before it respecting Elder's right to make the count and found disclosure by Elder of the various physical elements embraced in the combination as described.

We have experienced much difficulty in interpreting certain of Pearson's reasons of appeal, accompanying the appeal to us. A number of them are general in nature and do not sufficiently specify the particulars in which the board is claimed to have erred. Others of them are somewhat argumentative in character and lack in clearness. We find no error alleged as to the board's holding that Elder disclosed "means for pressing together the carried disc and a pad to cause the disc to be adhesively united to the pad," which is element No. 5 of the count as above analytically stated. This was a controverted matter before the board, but, since the board's holding upon it does not appear to be complained of in the reasons of appeal to us, we need give it no consideration.

Upon a careful analysis of such reasons of appeal as are sufficiently specific to justify our considering them, we find that Pearson has alleged error upon only two points decided by the board which are material to the question of Elder's disclosure. These are embodied in reasons of appeal Nos. 5 and 9, respectively.

Reason No. 5 reads: "The Board of Interference Examiners erred in holding that Elder in his original application as filed discloses a means for directly heating the disk while on the carrier."

■■ We accept reason of appeal No. 9 (quoted above in connection with our discussion of the question of jurisdiction) as being sufficient to bring before us for consideration the correctness of the board's holding relative to the disclosure by Elder of "means for supporting a fusible adhesive coated disc on said carrier," which is the second of the elements of the count as above analyzed. It will be observed from a study of this reason of appeal that, fundamentally, it challenges the board's construction of the phrase "supporting * * * on," appearing in the count. It means, as we interpret it (and this seems to be the only reasonable interpretation possible), that the board erred in not holding that Elder failed to disclose a means for attaching a spot (or disc) to the carrier, because the word "supporting," as used in the count, should be given the same meaning as the word "attaching," as used in claim 6 of Pearson's patent.

There is no claim in any reason of appeal that Elder does not actually disclose means for supporting a disc, or spot, on the carrier when the words "supporting" and "on" are given their ordinary meanings. It is merely contended, in effect, that "supporting" and "on" should be construed here as having the same meaning as the words "attaching" and "to."

The phrases "supported * * * on" and "attaching * * * to" were construed and differentiated by each of the tribunals of the Patent Office who had occasion to pass upon the question.

In the first instance, when Elder copied claim 6 of the patent and requested an interference, the examiner held (considering the question ex parte) that Elder's disclosure would not support "attaching * * * to," and he adhered to this view upon reconsideration. In the second instance the examiner held that Elder did disclose the physical element defined in the phrase "supporting * * * on," and that holding was reiterated in the examiner's decision denying Pearson's motion to dissolve and was approved by the board in its decision awarding priority.

The board said: "Elder clearly shows 'means for supporting a fusible adhesive coated disk on said carrier' in the shoulder 232 provided on the carrier 127."

That holding is clearly correct, and the structure shown by Elder obviously satisfies that feature of the count.

The remaining question to be considered is whether the board erred in holding that Elder discloses means for directly heating the disc while on the carrier. See reason of appeal No. 5, quoted supra.

It is apparent from the decision of the respective tribunals of the Patent Office that the arguments made before them on this point were substantially the same as those made before us.

Pearson points out that the element of the count defined in the clause reading "means for directly heating the disc while on said carrier" appears verbatim in claim 6 of his patent and argues that its meaning should be determined here "by the disclosure in the patent itself," and that if so determined Elder failed to make disclosure.

In passing upon the motion to dissolve, the examiner (evidently following the order in which the issues were presented in Pearson's brief before him) said:

"Under ground (1b), Pearson contends that 'directly heating the disk' denotes 'subjecting the disk throughout the entire adhesive-covered face thereof to direct contact with the heating medium' and that Elder has not disclosed means for such direct heating. On page 24 of his brief, Pearson further contends that 'directly heating' in the light of the Pearson disclosure means 'presenting the adhesive face of the disk to the heating elements so that the heat radiating therefrom will contact with the disk and soften the adhesive.'

"On page 8 of his brief, Pearson contends that 'directly heating' in the light of

his disclosure means that the disk 'is subjected directly to the heat radiating from the heating elements' as distinguished from heating 'by contact with some element which is heated.' In Pearson's disclosure there is nothing to warrant the narrow interpretation for which Pearson contends. There is nothing in Pearson's disclosure or claims to interpret 'directly heating' in claim 6 more narrowly than excluding only heating directly the cap or the cap cushion for the purpose of indirectly heating the spot. Direct heating may be effected by radiation or conduction.

"Thus in the disclosure of Elder the hot pad is clearly a means for indirectly heating the spot, but the hot presser foot 92 (Figure 10), the hot punch of Figure 12, and the heating element 503, all are individual means for directly heating the spot.

"There is nothing in Pearson to support the contention that 'directly heating the disk' as set forth in the count means directly heating the adhesive-coated face of the disk. Claims 3, 5 and 12 of Pearson are expressly limited to applying heat directly to the coated side of the disk. The omission of such limitation in Pearson's claim 6 must be assumed to be deliberate in the absence of a basis for a contrary implication in other terms of the claim.

"In view of Elder, page 25, lines 5 to 9 (where it is stated: ' * * * the shoulder 232 is of very slight dimension, being simply large enough to retain the spot and allow its ready removal'), it cannot be said that Elder does not heat the entire surface of the disk. Furthermore, the count is not so limited.

"Even if it be assumed, as Pearson has contended, that only three of Elder's four heating means apply heat indirectly to the spot, that fact would be immaterial since the count does not exclude heating means in addition to the direct heating means. Actually, as indicated above, Elder shows only one indirect heating means and three direct heating means.

"On page 35, lines 25 to 27 of Elder it is stated: 'Thus, by suitable heating means associated with the conveyor and/or the spot transfer dial, the adhesives will be softened and rendered adhesive in the transfer dial.' Even if Elder had illustrated this description by showing heated carriers 127 which heated the spots by contact with the edges of the spots, such means would clearly be a means for directly heating the spots.

"It is therefore held that Elder has disclosed means for 'directly heating the disk' and can properly make the count as to those terms."

In its decision awarding priority, the board, while using different phraseology, approved the finding of the examiner that Elder disclosed means for directly heating the disc while on the carrier as called for by the count, and we are in entire agreement with that holding.

Since it is clear that Elder has the right to make the count, it is unnecessary to our decision that the right of Pearson to make it be discussed.

The decision of the Board of Interference Examiners awarding priority to Elder is affirmed.

Affirmed.